# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**
March 18, 2011

Lyle W. Cayce
Clerk

No. 10-31083
Summary Calendar

CHARLOTTE N. WHITE,

      Plaintiff - Appellant

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:10-CV-3067

Before KING, BENAVIDES, and ELROD, Circuit Judges

FORTUNATO P. BENAVIDES, Circuit Judge:[*]

      Plaintiff Charlotte N. White brought this state law defamation action in Louisiana state court against Sherae Hunter, a constituent service representative for Senator Mary L. Landrieu. The Government substituted itself as the named defendant and removed the action to federal court. The district court dismissed the action on the ground that the Government has not waived

---

[*] Pursuant to 5th Cir. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Cir. R. 47.5.4.

No. 10-31083

immunity to defamation claims. White appealed, asserting that the Government is not the proper defendant because Hunter acted outside the scope of her employment when she allegedly defamed White. We affirm.

## I. BACKGROUND

Plaintiff Charlotte White worked as an Administrative Law Judge with the Social Security Administration. On April 20, 2009, White visited the office of Senator Mary Landrieu to request assistance for a certain Dr. Dudley Stewart, who was having difficulty obtaining Medicare coverage for a bone marrow transplant. White met with Sherae Hunter, a constituent service representative, and allegedly requested "that Senator Landrieu's office assist Dr. Stewart regarding his problem with medicare, so that he could attain the needed bone marrow transplants because Medicare law had changed and at the time covered such a procedure." Hunter thought the request was inappropriate, and an argument ensued. The next day, Hunter wrote a letter to Joan Parks-Saunders, Regional Chief Administrative Law Judge for the Social Security Administration. The letter describes White's visit to Senator's Landrieu's office and concludes:

> As a representative of the Social Security Administration, Ms. White's actions and behavior were less than professional or appropriate. She was in our office to advocate for someone else who, as we later discovered, is a physician who sometimes testifies for Ms. White in her social security cases. She was also demanding that a United States Senator overstep her jurisdiction and authority to compel an agency to go outside their policies and procedures. In addition, Ms. White violated privacy rights by going through a file containing personal information that she removed from a staffer's personal work area and to which she had no authority.

2

No. 10-31083

> As a federal employee, I believe it is my duty to bring this matter to your attention for your appropriate review.

The letter is written on Senate letterhead and signed by Hunter in her role as "Constituent Service Representative, Office of United States Senator Mary L. Landrieu." According to White, the letter "was a personal vendetta concocted by Hunter in her individual capacity along with the recipient of the letter" intended to bring about the termination of White's employment.

In addition to the allegations in White's complaint, White has produced an affidavit stating that she attended a meeting led by Parks-Saunders shortly before the incident at Senator Landrieu's office. At the meeting, White allegedly informed Parks-Saunders "that the agency's practice of continuing to open National Hearing Centers in the wake of an adverse and binding arbitration ruling, made by an independent arbitrator, was illegal." Parks-Saunders allegedly responded that she could terminate White's employment. White's affidavit further asserts that "[a] friend . . . told affiant that . . . she was working . . . with Sherae Hunter, when Hunter stated that she was a friend of Joan Parks-Saunders . . . ."

White filed a petition for defamation against Hunter in Louisiana state court on June 15, 2010. The petition was filed against Hunter "in her individual capacity, outside the course and scope of her official duties as a constituent service representative." On September 14, 2010, the United States Attorney for the Eastern District of Louisiana certified that "Hunter was at all times acting within the course and scope of her employment as an employee of the United States Senate at the time of the conduct alleged in the petition." The next day, the Government substituted itself as the named defendant and removed the

No. 10-31083

action to federal court. *See* 28 U.S.C. § 2679(d)(2).

The Government moved to dismiss on two grounds: first, that the Government has not waived immunity to defamation claims, *see* 28 U.S.C § 2680(h); and second, that White did not exhaust her administrative remedies before filing this action, *see* 28 U.S.C. § 2675(a). Both theories turn on whether Hunter acted within the scope of her employment when she sent the letter to Parks-Saunders, and thus whether the Government is the proper defendant in this action. The district court granted the Government's motion to dismiss. White appealed. We affirm.

## II. DISCUSSION

There is no dispute that White may not sue the Government for defamation. *See* 28 U.S.C § 2680(h); *Williams v. United States*, 71 F.3d 502, 506 (5th Cir. 1995); *El-Shifa Pharm. Indus. Co. v. United States*, 607 F.3d 836, 853 (D.C. Cir. 2010). The issue is whether the Government is the proper defendant in this action.

The Westfall Act provides that, upon certification by the Attorney General or his designated representative that a government employee was acting within the scope of his employment at the time of an allegedly tortious act, the United States may substitute itself as the proper defendant in an action against the employee and remove the action to federal court. 28 U.S.C. § 2679(d)(2); *Counts v. Guevara*, 328 F.3d 212, 214 (5th Cir. 2003). For purposes of removal jurisdiction, the certification conclusively establishes the employee was acting within the scope of his employment. *Id*.; *Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 432 (1995). For purposes of substitution, however, the certification is judicially reviewable. *Lamagno*, 515 U.S. at 434-36. A plaintiff who challenges

4

No. 10-31083

the Government's certification bears the burden of showing the employee's conduct was not within the scope of his employment. *Williams*, 71 F.3d at 506. "We review the district court's legal conclusions of the scope-of-employment issue de novo." *Counts*, 328 F.3d at 214.

Whether a federal employee acted within the scope of his employment is determined by the law of the state in which the negligent or wrongful conduct occurred. *Garcia v. United States*, 62 F.3d 126, 127 (5th Cir. 1995) (en banc). Neither party disputes that Louisiana law applies to this case. In Louisiana, "[g]enerally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron v. McDonald*, 639 So.2d 224, 226-27 (La. 1994). In other words, the issue is whether "the tortious conduct of the [employee] was so closely connected in time, place, and causation to his employment-duties as to be regarded a risk of harm fairly attributable to the employer's business." *Baumeister v. Plunkett*, 673 So.2d 994, 997 (La. 1996). Louisiana courts tend to focus on four factors: (1) whether the tortious act was primarily employment rooted; (2) whether the act was reasonably incidental to the performance of the employee's duties; (3) whether the act occurred on the employer's premises; and (4) whether it occurred during the hours of employment. *Manale v. City of New Orleans, Dep't of Police*, 673 F.2d 122, 126 (5th Cir. 1982). All four of these factors need not be met in a particular case. *Baumeister*, 673 F.2d at 997. Moreover, an employee's "conduct may be considered within the scope of employment even though it is done in part to serve the purposes of the servant or of a third person." *Ermert v. Hartford*

5

*Ins. Co.*, 559 So.2d 467, 476-77 (La. 1990). That the "predominant motive of the servant is to benefit himself or a third person does not prevent the act from being within the scope of employment." *Id.* Indeed, "[i]f the purpose of serving the master's business actuates the servant to any appreciable extent, the master is subject to liability if the act is otherwise within the service." *Id.*

On its face, Hunter's letter was within the scope of Hunter's employment as a constituent service representative for Senator Landrieu. The events described in the letter took place in Senator Landrieu's office during working hours. The events involved a request by a constituent (i.e., White) that Hunter perform a service in her official capacity for another constituent (i.e., Stewart). The letter was written on Senate letterhead and signed by Hunter in her official capacity. And the letter specifically states Hunter believed it was her "duty" as a "federal employee" to bring White's request to Parks-Saunders's attention. In short, the letter appears to have been reasonably "incident to" Hunter's performance of constituent services, and "at least partly actuated" by Hunter's desire to protect the integrity of Senator Landrieu's office. *See Baumeister*, 673 So.2d at 997.

White alleges that Hunter's letter "was a personal vendetta concocted by Hunter in her individual capacity along with the recipient of the letter." White's complaint, however, provides no factual support for this allegation. White has produced an affidavit stating that she argued with Parks-Saunders shortly before the incident at Senator Landrieu's office, and also that Hunter and Parks-Saunders may have been friends at one time. But these statements do not plausibly suggest that Hunter had a personal vendetta against White. Nor do the statements show that Hunter's letter was not motivated, at least to an

No. 10-31083

"appreciable extent," by the purpose of serving Senator Landrieu. *Ermert*, 559 So.2d at 476-77.

White asserts that she should be permitted limited discovery as to whether Hunter acted outside the scope of her employment. But White has no right to such discovery unless and until she alleges facts that plausibly suggest Hunter acted outside the scope of her employment. *See, e.g.*, *Wuterich v. Murtha*, 562 F.3d 375, 382 (D.C. Cir. 2009); *Singleton v. United States*, 277 F.3d 864, 871 (6th Cir. 2002); *Brumfield v. Sanders*, 232 F.3d 376, 380 (3d Cir. 2000). For the reasons already discussed, White's speculative allegations do not meet this burden. The district court therefore did not abuse its discretion in denying discovery. *See, e.g.*, *Singleton*, 277 F.3d at 872 (affirming, under abuse of discretion standard, district court's refusal to allow further discovery before substitution and dismissal); *Gutierrez de Martinez v. Drug Enforcement Admin.*, 111 F.3d 1148, 1155-56 (4th Cir. 1997) (same).

Because White has not met her burden of showing that Hunter acted outside the scope of her employment, the Government properly substituted itself as the defendant in this action. And because the Government has not waived immunity to defamation suits, White's defamation action was properly dismissed.

AFFIRMED.